# EXHIBIT 1

Nos. 25-1278/1538

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

AARON HALL; KATHERINE GLOD; JEFFREY BINDER,

*Plaintiffs-Appellees,*

v.

TRIVEST PARTNERS, L.P.; TGIF POWER HOME INVESTOR, L.L.C.;
TRIVEST INVESTMENT ADVISORS, L.L.C.; TRIVEST PARTNERS, INC.;
TRIVEST GROWTH PARTNERS, INC.; TRIVEST GROWTH PARTNERS, L.P.;
TRIVEST GROWTH PARTNERS G.P., L.L.C.; TRIVEST GROWTH INVESTMENT FUND, L.P.; and TGIF POWER HOME BLOCKER, INC.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Michigan at Flint
No. 4:22-cv-12743 — Hon. F. Kay Behm

---

**APPELLEES' PETITION FOR PANEL REHEARING AND REHEARING *EN BANC***

---

Nicholas A. Coulson
**COULSON P.C.**
300 River Place Drive, Suite 1700
Detroit, MI 48207
*Counsel for Petitioning Plaintiffs-Appellees*

**TABLE OF CONTENTS**

*Page(s)*

**INTRODUCTORY STATEMENT** .......................................................... 1

**BACKGROUND** .......................................................... 2

**REASONS FOR GRANTING REHEARING** .......................................................... 4

I. THE PANEL IMPROVIDENTLY REACHED A CONSTITUTIONAL ISSUE BECAUSE IT IGNORED OR MISAPPREHENDED DISPOSITIVE PREDICATE ANALYSIS .......................................... 4

A. The Panel Correctly Recognized That This Court's Construction of the "Ends of Justice" Requirement Would Be Satisfied if There Were No Other Forum in Which All Defendants Could Be Sued Together Without Resort to RICO Jurisdiction—Then It Moved On Without Conducting That Inquiry ......................... 5

B. The Panel Disregarded This Court's Rule 12(b)(2) Precedent, Under Which Defendants Failed to Carry Their Burden to Rebut Plaintiffs' Prima Facie Showing of Personal Jurisdiction 6

C. The Panel Failed to Adhere to Supreme Court and Circuit Court Authority Dictating That No Court in Florida Would Have Personal Jurisdiction Over Mr. Waller ...................................... 7

1. Supreme Court and Circuit Court Authority Dictate That No Court in Florida Would Have Specific Personal Jurisdiction Over Mr. Waller ........................................... 8

2. Supreme Court and Circuit Court Authority Dictate That No Court in Florida Would Have General Personal Jurisdiction Over Mr. Waller ......................................... 11

II. ABSENT NEED OR JUSTIFICATION, THE PANEL INTERPRETED RICO'S "ENDS OF JUSTICE" REQUIREMENT BEYOND, AND INCONSISTENTLY WITH, THE SETTLED APPROACH OF THIS COURT AND ITS SISTER CIRCUITS...... 11

A. This Court Is Among a Consensus Holding That RICO's Nationwide Service Provision—at a Minimum—Establishes Personal Jurisdiction Over All Defendants if There Is at Least One "Anchor Defendant" and No Court Could Exercise Traditional Personal Jurisdiction Over Every Defendant........ 11

B. The Opinion Contravenes This Court's, and the Supreme Court's Construction of the "Ends of Justice" and What They "Require" ........................................................................................ 13

III. THE PANEL'S INSERTION OF ATEXTUAL FOURTEENTH AMENDMENT "MINIMUM CONTACTS" LIMITATIONS INTO THE "ENDS OF JUSTICE" REQUIREMENT CONFLICTS WITH THE SUPREME COURT'S FIFTH AMENDMENT JURISPRUDENCE ........................................................................ 13

IV. THIS APPEAL RAISES QUESTIONS OF EXCEPTIONAL PUBLIC IMPORTANCE ........................................................................... 16

**CONCLUSION ......................................................................................... 17**

# TABLE OF AUTHORITIES

*Page(s)*

***Cases***


*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ........... 8–9

*Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535 (9th Cir. 1986)........................................................................ 12

*Carmouche v. Tamborlee Management, Inc.*, 789 F.3d 1201 (11th Cir. 2015) ........................................................................................9

*Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226 (10th Cir. 2006)............. 12

*Frida Kahlo Corp. v. Pinedo*, 172 F.4th 1316 (11th Cir. 2026)................... 10

*Fuld v. PLO*, 606 U.S. 1 (2025)........................................................... *passim*

*Laurel Gardens, LLC v. McKenna*, 948 F.3d 105 (3d Cir. 2020) ................ 12

*Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668 (7th Cir. 1987) ................ 12

*Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021) ............................... 14

*MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894 (6th Cir. 2017)......... 10

*Mannes v. World Boxing Ass'n*, No. 26-80361-CV, 2026 LX 293775 (S.D. Fla. May 22, 2026) ........................................................................ 10

*Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017) ............................................4

*Peters Broadcast Engineering, Inc. v. 24 Capital, LLC*, 40 F.4th 432 (6th Cir. 2022)...................................................................... 1, 5–7, 12

*Rescue Army v. Municipal Court of Los Angeles*, 331 U.S. 549 (1947) .........5

*Sanders v. United States*, 373 U.S. 1 (1963) ................................................ 13

*Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009)....................................... 13

*Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018).................. 10

*Wilson v. Safelite Group, Inc.*, 930 F.3d 429 (6th Cir. 2019)....................... 14

*Zedner v. United States*, 547 U.S. 489 (2006) ............................................. 13

***Statutes***

18 U.S.C. § 1965(b) ........................................................................ *passim*

18 U.S.C. §§ 3161–3174 ........................................................................ 13

***Rules***

Fed. R. App. P. 32(a)(5) ........................................................................ 18

Fed. R. App. P. 32(a)(6) ........................................................................ 18

Fed. R. App. P. 32(f) ........................................................................ 18

Fed. R. App. P. 40(b)(1) ........................................................................ 2

Fed. R. App. P. 40(b)(2) ........................................................................ 1

Fed. R. App. P. 40(d)(3)(A) ........................................................................ 18

Fed. R. Civ. P. 12(b)(2) ........................................................................ 3, 6–7

***Other Authorities***

Order Granting Petition for Permission to Appeal, *In re Trivest Partners LP*, No. 24-0102 (6th Cir. Mar. 21, 2025) ........................................ 4

## INTRODUCTORY STATEMENT

The panel's published, divided opinion reverses on a constitutional ground it had no need to reach, while overlooking the one statutory consideration that resolves this appeal. This Court's precedent required only a straightforward application of RICO's jurisdictional provision, 18 U.S.C. § 1965(b): because at least one defendant is subject to traditional personal jurisdiction, and no court could exercise traditional jurisdiction over all defendants together, the "ends of justice" are satisfied and Defendants' motion was properly denied. The panel acknowledged that governing principle but never applied it. Instead, it imported Fourteenth Amendment "minimum contacts" limitations that the Supreme Court has excised from the governing Fifth Amendment analysis, *Fuld v. PLO*, 606 U.S. 1, 15 (2025), to constrain a statute Congress designed to override those very limitations. In doing so, it stripped § 1965(b) of its guaranteed purpose — a single federal forum for all RICO defendants — and left the provision "muddie[d]," with "[f]uture litigants … left wondering what precisely they need to show." Dissent, Slip Op. at 10.

This is the rare case warranting both panel and *en banc* rehearing, on multiple independently sufficient grounds. Rehearing *en banc* is warranted under Fed. R. App. P. 40(b)(2) to (1) conform this Circuit's decisions to Supreme Court precedent, most notably *Fuld*; (2) secure and maintain uniformity of this Court's decisions, where the opinion cannot be squared with *Peters Broadcast Engineering, Inc. v. 24*

*Capital, LLC*, 40 F.4th 432 (6th Cir. 2022); (3) avoid an unwarranted departure from the authoritative decisions of other circuits; and (4) resolve questions of exceptional importance concerning Congress's authority to confer nationwide jurisdiction and the Fifth Amendment's limits on the personal jurisdiction of the federal courts. *See Fuld*, 606 U.S. at 16. Panel rehearing is warranted under Fed. R. App. P. 40(b)(1). Beyond the points of law above, the panel overlooked or misapprehended the undisputed, dispositive fact that the only "evidence" of any Waller-Florida connection is its request that the District Court take judicial notice that PHS — a nonparty of which Waller was a shareholder-executive — was registered to do business there. R.20 at 3, N.1, PageID.192.

## BACKGROUND

The three Michigan Plaintiffs brought this action in the Eastern District of Michigan against a North Carolina resident individual (W. Jayson Waller) and two[1] interrelated private equity entities organized in Delaware and headquartered in Florida. Complaint, R.1, PageID.1-35. Plaintiffs allege that the Defendants conducted the affairs of a racketeering enterprise—the now-defunct Power Home Solar, LLC ("PHS"), in which Waller was an officer-shareholder and the Trivest

[1] The seven later Trivest Defendants were added to the case in an amended complaint, and were parties to the related appeal of the District Court's denial of the Defendants' motions to compel arbitration, but are not parties to the jurisdictional appeal.

Defendants were participatory investment partners—through a pattern of racketeering activity. *See id*. This occurred while Waller was living in Michigan and working at PHS's Troy, Michigan office. Order on Waller MJOP, R.52, PageID.596. As alleged, Plaintiffs and a putative class of tens of thousands were financially destroyed—induced to purchase nearly useless solar systems for many tens of thousands of dollars with lengthy loans—by Defendants' pattern of mail and wire fraud relating to deliberate material misrepresentations regarding PHS's systems' capacity for electric generation and financial savings. R.1, PageID.1-3, 20-24.

Two of the Trivest Defendants moved to dismiss under, *inter alia*, Fed. R. Civ. P. 12(b)(2), arguing only that the District Court lacked traditional personal jurisdiction over them. Motion to Dismiss, R.17. In response, Plaintiffs noted that RICO extends personal jurisdiction through nationwide service of process over other parties residing in any other district, provided that at least one defendant is otherwise subject to traditional personal jurisdiction and the ends of justice require it. 18 U.S.C. § 1965(b). Opposition, R.18, PageID.167-170. Because another Defendant was plainly subject to personal jurisdiction in the District Court, and there was no court that could have exercised traditional personal jurisdiction over all defendants, dismissal was inappropriate. *Id.* In reply, the two Trivest Defendants offered no evidence, but asked the Court to take judicial notice of PHS's unspecified registration to do business in Florida. R.20 at 3, N.1, PageID.192. The District Court

denied the motion, but it made the unfortunate passing comment that "it appears this case could be litigated in Florida"—a likely function of the Defendants having argued that incorrect premise for the first time on appeal.

An administrative panel of this Court granted Defendants-Appellants leave to appeal "to resolve whether the ends-of-justice requirement can only be satisfied if no other district court has jurisdiction over all the named defendants." Mar. 21, 2025 Order (Case No. 24-0102) at 1, 4. That decision was based, among other things, on a conclusion that "the lack of binding authority has resulted in numerous district courts addressing the proper interpretation of the ends-of-justice provision. The issue arises frequently and resolution would aid the district courts." *Id.* at 3.

## <u>REASONS FOR GRANTING REHEARING</u>

### I. THE PANEL IMPROVIDENTLY REACHED A CONSTITUTIONAL ISSUE BECAUSE IT IGNORED OR MISAPPREHENDED DISPOSITIVE PREDICATE ANALYSIS.

This Court has acknowledged that "Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues" such as "[w]here a statutory or nonconstitutional basis exists for reaching a decision[.]" *Osborn v. Griffin*, 865 F.3d 417, 459 (6th Cir. 2017) (citation omitted). Here, resolving the appeal on a nonconstitutional basis was not just an option, it was a prerequisite to even reaching an issue that was neither raised by any party nor implicated by the District Court's decision. The issues in this appeal are squarely

covered by this Court's existing precedent, yet the panel waded into constitutional grounds in a way that cannot be reconciled with the Supreme Court's directives in *Fuld*. This is what courts seek to avoid by disposing of constitutional issues, "the most delicate of the Court's functions," only when strictly necessary. *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 569 (1947).

**A. The Panel Correctly Recognized That This Court's Construction of the "Ends of Justice" Requirement Would be Satisfied if There Were no Other Forum in Which all Defendants Could be Sued Together Without Resort to RICO Jurisdiction. Then it Moved on Without Conducting That Inquiry.**

The panel acknowledged that binding circuit precedent requires applying 18 U.S.C. § 1965(b) to ensure "at least one federal forum for all defendants in a single civil RICO trial[,]" *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 441 (6th Cir. 2022). This guarantee logically requires that whatever else they may entail, "the ends of justice" will always be satisfied if there is no federal forum where all defendants could be summoned without resorting to RICO jurisdiction. But the panel did not follow that mandate by analyzing whether this action could have been litigated in Florida (the only other proposed or potential forum) absent RICO jurisdiction, which is all it would have had to do to decide the case. Rather, it promulgated a test that ignores the guarantee, and instead stands for the proposition that the mere unexamined, faulty assertion of another forum's availability is sufficient to require an entirely different "ends of justice" analysis.

**B. The Panel Disregarded This Court's Rule 12(b)(2) Precedent, Under Which Defendants Failed to Carry Their Burden to Rebut Plaintiffs' Prima Facie Showing of Personal Jurisdiction.**

In *Peters Broad. Eng'g, Inc.,* this Court confirmed that the ordinary Rule (12)(b)(2) burden shifting process applies to motions to dismiss for lack of personal jurisdiction under RICO's nationwide service provision. *Peters Broad. Eng'g, Inc.,* 40 F.4th at 437-38. Once the complaint makes out a prima facie case for personal jurisdiction, "[t]he defendant's motion to dismiss must be supported by evidence. The burden then shifts back to the plaintiff, 'who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id.* (citation and internal quotation marks omitted). And importantly, this Court "must view the pleadings and affidavits in a light most favorable to the plaintiff and *not weigh* '*the controverting assertions* of the party seeking dismissal.'" *Id.* (citation omitted).

The original complaint (which Defendants moved against) alleges that Mr. Waller was a citizen of North Carolina (R.1 at 4, ¶15) who "maintain[ed] a home in Birmingham, Michigan" (*id.* at 4, ¶15) and injured the three Michigan Plaintiffs (*id.* at 4 ¶¶10-12; *see generally id.*). It does not contain a single allegation regarding Waller performing a single act in Florida. *See generally id.* On the face of the complaint, Waller could have been subject to traditional personal jurisdiction for these claims only in Michigan or Florida. Despite this prima facie case, Defendants

introduced no evidence that would rebut this showing by demonstrating Waller has even minimal contacts that could subject him to personal jurisdiction in Florida.

Nevertheless, the panel did not merely "weigh," but uncritically accepted "the controverting assertions of the part[ies] seeking dismissal." *See Peters Broad. Eng'g Inc.*, 40 F.4th at 437-38.; *cf* Slip Op. at 3 ("[the Trivest Defendants] said[] a district court in Florida would have personal jurisdiction over all three defendants[.]"). Then, citing Defendants' irrelevant judicial notice content, the panel concluded that "[PHS] (which sold the solar-panel systems to these plaintiffs) apparently had an office [in Florida]." Slip Op. at 5. But as the Dissent noted, "the record *contains no information* about Waller's contacts [in Florida]." Dissent, Slip Op. at 11 (emphasis added). The Panel silently placed the burden on Plaintiffs to "prove a negative" despite the Defendants' wholesale failure to rebut their prima facie showing. This approach plainly contradicts *Peters Broadcast* and other clear decisions of this Court enshrining the Rule 12(b)(2) burden shifting process.

### C. The Panel Failed to Adhere to Supreme Court and Circuit Court Authority Dictating That No Court in Florida Would Have Personal Jurisdiction Over Mr. Waller.

The panel opinion turns, as a threshold matter, on its undeveloped assumption that a Florida court would have personal jurisdiction over Mr. Waller with respect to the Michigan Plaintiffs' claims. But as the dissent modestly observed, "it is . . . not clear from the record that traditional personal jurisdiction over Defendant Waller

exists in Florida." Dissent, Slip Op. at 11. In fact, the opinion's nominally *de novo* personal jurisdictional analysis makes no effort to apply the Supreme Court's well-established requirements for personal jurisdiction to the crucial determination of Mr. Waller's amenability to suit in Florida. Rather, it runs afoul of them.

"Since our seminal decision in *International Shoe,* our decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.* (citation omitted). And while "[a] court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State… Specific jurisdiction is very different." *Id.* (citations omitted). Under any reasoned analysis, the panel could have found Waller subject to neither form of personal jurisdiction in Florida.

**1. Supreme Court and Circuit Court Authority Dictate That No Court in Florida Would Have Specific Personal Jurisdiction Over Mr. Waller.**

Under binding authority, this is the one place a defendant's forum-state contacts (and their relation to the claims here) controls, yet the panel did not touch them. Florida's long-arm statute "extends to the limits on personal

jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche v. Tamborlee Mgmt. Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The constitutional analysis therefore controls: "[i]n order for a state court to exercise specific jurisdiction, 'the *suit*' must 'arise out of or relate to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (emphasis in original) (cleaned up). "'In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.' When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264 (citations omitted) (cleaned up).

In *Bristol-Myers Squibb*, the Supreme Court ruled that a defendant's in-state activities do not create personal jurisdiction for claims that are not connected to them—even if in-state activities are similar to those implicated by the plaintiffs' claims:

> the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims…What is needed [] is a connection between the forum and the specific claims at issue.

*Id.* at 264-65.

There is no record of *any* Waller-Florida contacts to which plaintiffs' claims could even plausibly be tied. And the fact that PHS registered as a foreign corporation in Florida (or even if it had been established that it had a physical office there) would be insufficient to subject that nonparty to personal jurisdiction with respect to *these Plaintiffs' claims*, let alone Waller. *See id.* ("Even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to *those sales*") (citation omitted) (emphasis added) (cleaned up); *Mannes v. World Boxing Ass'n, No. 26-80361-CV,* 2026 LX 293775, at *9 (S.D. Fla. May 22, 2026) (no general or personal jurisdiction despite defendant's "regist[ration] to do business in Florida as a foreign corporation") (citing *Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018)). And even if PHS itself were subject to specific personal jurisdiction, Florida's version of the corporate shield doctrine, recognized by the Eleventh Circuit, would bar jurisdiction over Waller for acts taken on behalf of the company. *Frida Kahlo Corp. v. Pinedo*, 172 F.4th 1316, 1322 (11th Cir. 2026) (citation omitted).

Where there would be no Florida personal jurisdiction over PHS, much less its officer Waller, Plaintiffs have gone beyond carrying their "relatively slight" burden of "mak[ing] a *prima facie* showing that personal jurisdiction exists." *See* Appellees' Br. at 20-21 (quoting *MAG IAS Holdings, Inc. v. Schmuckle,* 854 F.3d 894, 899 (6th Cir. 2017)). The sole evidence Defendants offered to "rebut"

Case: 19-4553 Document: 29 Filed: 07/28/2021 Page: 16

Plaintiffs' prima facie case of personal jurisdiction is entirely irrelevant to the matter, and the panel failed to consider Defendants' plain failure to carry their burden.

**2. Supreme Court and Circuit Court Authority Dictate That No Court in Florida Would Have General Personal Jurisdiction Over Mr. Waller.**

The Panel did not determine, and Defendants have never argued, that Mr. Waller was subject to general personal jurisdiction in Florida. He indisputably was not. General personal jurisdiction would only attach if Mr. Waller was (1) domiciled in Florida, (2) consented to jurisdiction in Florida, or (3) was served in Florida. He resided (and was served) in North Carolina (*see* Slip. Op. at 4), and he has neither consented nor had occasion to consent to Florida jurisdiction.

## II. ABSENT NEED OR JUSTIFICATION, THE PANEL INTERPRETED RICO'S "ENDS OF JUSTICE" REQUIREMENT BEYOND, AND INCONSISTENTLY WITH, THE SETTLED APPROACH OF THIS COURT AND ITS SISTER CIRCUITS.

### A. This Court is Among a Consensus Holding That RICO's Nationwide Service Provision—at a Minimum—Establishes Personal Jurisdiction Over All Defendants if There is At Least One "Anchor Defendant" and No Court Could Exercise Traditional Personal Jurisdiction Over Every Defendant.

Prior to the Panel's Opinion, circuit (and district) courts had diverged on the meaning of the "ends of justice" requirement. That jurisprudence can be divided neatly into two categories, which hold that where at least one defendant satisfies § 1965(b) the ends of justice requirement mandates either: (1) that there be no available forum without resorting to RICO personal jurisdiction; or (2) *something*

*less* than that. *See, e.g., Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) (requiring no available forum); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006) (rejecting strict no available forum requirement in favor of "a flexible concept uniquely tailored to the facts of each case"); *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 121 (3d Cir. 2020) (declining to select Ninth or Tenth Circuit approach because "Plaintiffs establish both[.]'"). Under either approach, the lack of another available forum under traditional personal jurisdiction necessarily satisfies the requirement, and even circuit courts (including this Court) that have not chosen between them have endorsed the "no other forum" approach as a floor. *Peters Broad. Eng'g, Inc.*, 40 F.4th at 441 (adopting approach that "ensures that there will be at least one federal forum for all defendants in a single civil RICO trial."); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987) (similar). The Panel's interpretation speeds past that sole universally dispositive factor and tacks on Fourteenth Amendment considerations foreclosed by *Fuld*.

The choice among these approaches is immaterial here: under *Peters Broadcast* and every sister circuit's test, the "ends of justice" are necessarily satisfied when no forum is available without resorting to RICO jurisdiction—indisputably the case here. The only way Defendants could prevail is if the panel

ignored that dispositive factor and imposed new, atextual constraints. That is what it did.

### B. The Opinion Contravenes this Court's, and the Supreme Court's Construction of the "Ends of Justice" and What They "Require."

Not only does the panel opinion construe "the ends of justice" requirement inconsistently with RICO jurisprudence, but also with its ordinary legal interpretation. "[T]he ends of justice" is a meaningful legal term the Supreme Court has had numerous occasions to review. The Supreme Court has consistently interpreted the term to reflect an intent to convey discretion and flexibility on district courts. *See, e.g., Sanders v. United States,* 373 U.S. 1, 17 (1963). In more recent decades, the Supreme Court considered the meaning of the "ends-of-justice" language in the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174. *Zedner v. United States*, 547 U.S. 489, 498-99 (2006). Justice Alito's opinion for a near-unanimous court held that the "ends-of-justice" language reflects an intent to give district courts "necessary flexibility" and "discretion." *Id.* As the dissent observed, this Court has also interpreted the term. Dissent, Slip Op. at 9 ("[W]e have recognized that statutes using the near-identical "in the interest of justice" language 'confer broad discretion' on the district court.") (quoting *Stanifer v. Brannan*, 564 F.3d 455, 457 (6th Cir. 2009)).

## III. THE PANEL'S INSERTION OF ATEXTUAL FOURTEENTH AMENDMENT "MINIMUM CONTACTS" LIMITATIONS INTO THE "ENDS OF JUSTICE" REQUIREMENT CONFLICTS WITH

**THE SUPREME COURT'S FIFTH AMENDMENT JURISPRUDENCE.**

When Congress authorizes nationwide service of process, it serves to untether a cause of action from the Fourteenth Amendment's traditional personal jurisdiction constraints. The Opinion frustrates this exercise of federal authority by improperly deploying those very constraints to inhibit RICO's nationwide service provision nevertheless. *See Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 440–41 (6th Cir. 2019) (Thapar, J., concurring in part) ("our job is not to replace the text that Congress enacted," and declining to "journey beyond the statutory text").

Relatedly, the panel's decision to imbue Fourteenth Amendment structures into the Fifth Amendment analysis adds a further dimension to the "ends of justice" Circuit split that is wholly inconsistent with well-settled law. The Supreme Court has recently emphasized that Fourteenth Amendment personal jurisdiction considerations have no place in the much more limited Fifth Amendment personal jurisdiction analysis. The panel trod entirely new ground in this endeavor, and no court or litigant required or requested it.

It has long been understood that where a federal court applies a federal statute, "the due process requirements emanate from the Fifth rather than the Fourteenth Amendment." *Lyngaas v. Curaden AG*, 992 F.3d 412, 422 (6th Cir. 2021). Courts, including this Court, formerly viewed those considerations as "the same as with any other personal jurisdiction inquiry…only in reference to the *United States as a*

*whole*, rather than a particular state." *Id.* (emphasis added). Even under that standard, the panel's focus on state-level contacts would have been improper. But in *Fuld*, the Supreme Court excised even the national-level "minimum contacts" standard from Fifth Amendment personal jurisdiction analyses altogether, leaving in its place only—at most—the much more flexible "reasonableness" standard. *Fuld,* 606 U.S. at 23-24. The panel resurrected this discarded limitation by grafting it onto the federal jurisdictional statute at issue.

The panel held that what it labeled "interests of convenience" "'cannot 'require,' for purposes of § 1965(b), that a defendant be haled into a district in which it lacks minimum contacts." *See* Slip Op. at 6. But the District Court's considerations mirror the "Reasonableness" factors supplied by the Supreme Court, which merely seek to ensure that the exercise of jurisdiction does not "make[] litigation so 'gravely difficult and inconvenient' as to render the exercise of personal jurisdiction 'unreasonable and unfair[.]'" *Fuld*, 606 U.S. at 4 (citations omitted). "Reasonableness, we have explained, will depend in each case 'on an evaluation of several factors,' including 'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *Id.* at 23-24 (citations omitted). *Id.* at 23-24. The District Court determined that: (1) it was desirable to have the whole action litigated in one court (the central premise of the jurisdictional provision); (2) there was "minimal" burden on the Defendants; (3) that Plaintiffs

would suffer inconvenience even if they were able to litigate in Florida; and (4) that there was no justification for the delay inherent in transfer. As summarized by the dissent:

> The District Court's approach and conclusion were correct. All of the Plaintiffs [] are Michiganders; they allegedly suffered harm in Michigan, caused by a scheme operated out of Michigan…Defendants… have identified no particular hardship they face… It also stands to reason that most of the evidence relevant to this case is related to or located in Michigan.

Dissent, Slip Op. at 11. Despite issuing its ruling before *Fuld* was released, the District Court's findings align far more closely with *Fuld's* affirmed "reasonableness" standard than do the inapplicable "minimum contacts" concerns the panel invoked.

## IV. THIS APPEAL RAISES QUESTIONS OF EXCEPTIONAL PUBLIC IMPORTANCE.

The scope of RICO's jurisdictional provision was a question of exceptional importance inherent to this appeal. This Court's motions panel already recognized the question's importance and recurrence, granting interlocutory review because "the issue arises frequently and resolution would aid the district courts." Mar. 21, 2025 Order at 3. The merits opinion leaves them with *less* guidance than before.

Now, the panel opinion implicates more substantial questions of exceptional importance: the Fifth Amendment's due process requirements, Congress's authority

to confer federal jurisdiction, and the Constitution's constraints on "the Federal Government's broad[] sovereign authority." *See Fuld*, 606 U.S. at 16.

## CONCLUSION

Plaintiffs respectfully request that the Court grant panel rehearing or rehearing *en banc*. Should the Court deny rehearing, Plaintiffs note their intention to preserve for further review each issue raised herein.

Dated: June 30, 2026

Respectfully submitted,

/s/ Nicholas A. Coulson
Nicholas A. Coulson
**COULSON P.C.**
300 River Place Drive, Suite 1700
Detroit, MI 48207
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,856 words.

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Nicholas A. Coulson
Nicholas A. Coulson

## CERTIFICATE OF SERVICE

I certify that on June 30, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will serve a notice of electronic filing on all counsel of record.

/s/ Nicholas A. Coulson
Nicholas A. Coulson

# ADDENDUM — PANEL OPINION AND JUDGMENT

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 16, 2026

Mr. Nicholas Alexander Coulson
300 River Place Drive, Suite 1700
Detroit, MI 48207

Mr. Brian David Schmalzbach
Mr. Frank Talbott
McGuireWoods, 800 E. Canal Street
Richmond, VA 23219

Mr. Richard Trent Taylor
Office of the Attorney General
4709 Regal Oaks Road
Glen Allen, VA 23059

Re: Case Nos. 25-1278/25-1538, *Aaron Hall, et al v. Trivest Partners LP, et al*
Originating Case No. 4:22-cv-12743

Dear Counsel,

The court today announced its decision in the above-styled cases.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| AARON HALL; KATHERINE GLOD; JEFFREY BINDER,<br>*Plaintiffs-Appellees*,<br><br>*v.*<br><br>TRIVEST PARTNERS, L.P., TGIF POWER HOME INVESTOR, L.L.C., TRIVEST INVESTMENT ADVISORS, L.L.C., TRIVEST PARTNERS, INC., TRIVEST GROWTH PARTNERS, INC., TRIVEST GROWTH PARTNERS, L.P., TRIVEST GROWTH PARTNERS G.P., L.L.C., TRIVEST GROWTH INVESTMENT FUND, L.P., and TGIF POWER HOME BLOCKER, INC.,<br>*Defendants-Appellants*. | Nos. 25-1278/1538 |

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:22-cv-12743—F. Kay Behm, District Judge.

Argued: February 5, 2026

Decided and Filed: June 16, 2026

Before: CLAY, KETHLEDGE, and BUSH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Appellants. Nicholas A. Coulson, COULSON P.C., Detroit, Michigan, for Appellees. **ON BRIEF:** Brian D. Schmalzbach, R. Trent Taylor, Frank Talbott, MCGUIREWOODS LLP, Richmond, Virginia, for Appellants. Nicholas A. Coulson, COULSON P.C., Detroit, Michigan, for Appellees.

KETHLEDGE, J., delivered the opinion of the court in which BUSH, J., concurred. CLAY, J. (pp. 7–11), delivered a separate dissenting opinion.

## OPINION

KETHLEDGE, Circuit Judge. The plaintiffs brought this civil RICO suit in federal court in Michigan, and eventually named as defendants nine Florida corporations without contacts there. The district court held that it had personal jurisdiction over those defendants under the RICO statute, 18 U.S.C. § 1965(b), because, in the court's view, litigation of the case in Michigan would be as convenient for the parties as litigation in Florida. We hold that those reasons were insufficient as a matter of law under § 1965(b), and so we reverse.

I.

This case comes to us at the pleadings stage, so we take the allegations in the amended complaint as true. *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys.*, 877 F.3d 687, 689 (6th Cir. 2017).

In 2014, William Waller founded Power Home Solar, L.L.C., a company that sold residential solar-panel systems through in-home sales presentations. Company representatives promised homeowners that the systems would reduce their electricity bills by up to 90%, and often that the government would cover the system's cost. Power Home was registered to do business in Michigan and Florida.

In early 2018, Trivest Partners, L.P.—through its subsidiary Trivest Power Home Investor, L.L.C.—acquired a 25% share in Waller's company. Alongside Waller, the Trivest entities prepared, mailed, and posted online the company's advertising materials, which typically promised homeowners that they could "save thousands on their electric bills" and "get paid $2,000 after install." Am. Compl., R. 96 ¶¶ 92, 98, 99. Despite the advertising, business was bad, and in 2022 Waller's company declared bankruptcy.

A month later, Michigan citizens Aaron Hall, Katherine Glod, and Jeffrey Binder—each of whom had purchased one of the company's solar-panel systems for over $30,000—filed a putative class-action lawsuit in federal court against Waller, Trivest Partners, L.P., and TGIF

(formerly Trivest) Power Home Investor, L.L.C. The plaintiffs alleged that their electricity bills had not been "reduced in any amount near 70-90%," and in some instances had even increased. *Id.* ¶ 114. The plaintiffs further alleged that the defendants had "committed countless acts of mail and wire fraud" by disseminating "false, misleading, and fraudulent advertisements[.]" *Id.* ¶ 92. The plaintiffs claimed the defendants had conspired to engage in racketeering, in violation of the civil RICO Act, and had violated the Michigan Consumer Protection Act. 18 U.S.C. § 1962(c)-(d); M.C.L. § 445.901, et seq.

The two Trivest defendants (both Florida citizens) moved to dismiss, arguing that the district court in Michigan lacked personal jurisdiction over them. They contended that the civil RICO Act—which expands a district court's personal jurisdiction when "it is shown that the ends of justice require that other parties residing in any other district be brought before the court"—did not expand the district court's personal jurisdiction here. 18 U.S.C. § 1965(b); *see* Fed. R. Civ. P. 4(k)(1)(C). That was because, they said, a district court in Florida would have personal jurisdiction over all three defendants—and thus, they reasoned, "the ends of justice" could not require that they be sued in Michigan, a state with which they had no relevant contacts.

The district court denied the defendants' motion, reading section 1965(b) to require evaluation of "a number of factors," which it held "weigh in favor of retaining the litigation here." Op. & Order at 23-24. The Trivest defendants then petitioned under 28 U.S.C. § 1292(b) for permission to appeal the court's order. We granted that petition. *In re Trivest Partners LP*, No. 24-0102, 2025 U.S. App. LEXIS 6704, at *3-4 (6th Cir. Mar. 21, 2025).

Meanwhile, litigation proceeded in the district court. As relevant here, the plaintiffs added seven more Trivest entities as defendants—all of them, again, Florida citizens without contacts with Michigan. The court held that it had personal jurisdiction over those defendants too.

## II.

We review de novo the district court's interpretation of 18 U.S.C. § 1965(b). *See United States v. Haynes*, 55 F.4th 1075, 1077 (6th Cir. 2022).

"The province of the court is, solely, to decide on the rights of individuals." *Marbury v. Madison*, 5 U.S. 137, 170 (1803). In a particular case, however, that power extends only to parties over which the court has personal jurisdiction. *See Fuld v. PLO*, 606 U.S. 1, 11 (2025). "A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).

Here, whether the district court was able to serve process on the Trivest defendants depends on the meaning of 18 U.S.C. § 1965(b). Section 1965 provides in relevant part:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Section 1965(a) is a venue provision. *Peters Broad. Eng'g v. 24 Capital*, 40 F.4th 432, 440 (6th Cir. 2022). Specifically, a civil RICO action may be "instituted" only in a district where a defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Thus, "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Peters*, 40 F.4th at 439 (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)).

Section 1965(b) then allows a district court to exercise personal jurisdiction over additional parties residing in other districts, but only when "the ends of justice require[.]" 18 U.S.C. § 1965(b). Thus, § 1965 presents "no impediment to prosecution of a civil RICO action in a court foreign to some defendants" if doing so "is necessary"; but "Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora." *PT United*, 138 F.3d at 71-72.

Here, the plaintiffs brought suit in Michigan against one defendant residing in North Carolina (Waller) and nine other defendants (the proliferous Trivest entities) residing in Florida.

Venue is proper in the district court in Michigan because Waller undisputedly has minimum contacts there. But likewise undisputed is that the Trivest defendants have zero contacts with Michigan, and indeed could not be sued there according to "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The question, then, is whether "the ends of justice require[,]" 18 U.S.C. § 1965(b), that this suit be litigated in Michigan—when all nine of the Trivest defendants reside in Florida, and Waller's company (which sold the solar-panel systems to these plaintiffs) apparently had an office there. The statute does not define the term "ends of justice," but RICO schemes routinely extend to more than one state; and we agree with the Ninth Circuit that § 1965(b) ensures that plaintiffs can "bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union*, 788 F.2d at 539; *see also, e.g.*, *Peters*, 40 F.4th at 441 (§ 1965(b) "ensures that there will be at least one federal forum for all defendants in a single civil RICO trial").

But that hardly means a plaintiff can hale any RICO defendant it likes—no matter how far-flung—into court in any district where a single defendant has minimum contacts (to establish venue under § 1965(a)). Section 1965(b) demands that "the ends of justice *require*" service on nonresident defendants, not that service of process upon remote defendants merely advance or support those ends. "Require" conveys a sense of necessity; and so our court and others have recited that § 1965(b) permits service on out-of-state defendants only when "'necessary.'" *Peters*, 40 F.4th at 440 (quoting *PT United*, 138 F.3d at 71-72). And as the Second Circuit has observed: when all the defendants in a RICO case are subject to suit in one district, the "ends of justice" are "unlikely" to *require* haling nonresident defendants into another district where some or many of them, as a matter of due process, would normally not be subject to suit at all. *PT United*, 138 F.3d at 70.

In this case we need not endorse the Ninth Circuit's conclusion that—for a district court to serve process on defendants lacking minimum contacts with that district—"the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union*, 788 F.2d at 539. For our purposes it is enough to say that neither the plaintiffs nor the district court, respectfully, have identified reasons that "require"

litigation of this suit in Michigan. The plaintiffs do not argue that the Trivest defendants have any contacts with Michigan. The district court, for its part, reasoned that § 1965(b) was satisfied for three reasons: the case had already been pending in Michigan for ten months; the Trivest defendants had already secured "competent counsel located in Michigan"; and the court thought it no less convenient for the defendants to litigate in Michigan than for the plaintiffs to litigate in Florida. But those considerations are insignificant when compared to the due-process principle of "treating defendants fairly"—as the Supreme Court has often emphasized in its personal-jurisdiction cases. *Fuld*, 606 U.S. at 13; *see also, e.g.*, *Hanson v. Denckla*, 357 U.S. 235, 254 (1958).

To be clear, the Court's personal-jurisdiction cases are apposite here only by analogy: most of those cases concern the power of state courts as limited by the 14th Amendment; whereas, for actions arising within the United States, the Supreme Court has not identified any limits, under the Fifth Amendment, on the personal jurisdiction of the federal courts. *See Fuld*, 606 U.S. at 18-19. Yet the Supreme Court treats even the most compelling considerations of convenience as discretionary. *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (explaining that the doctrine of *forum non conveniens* is discretionary). By contrast, "a showing that the defendant has purposefully availed itself of the privilege of transacting business in the forum state, thus invoking the benefits and protections of its laws[,]" is "the *sine qua non* for *in personam* jurisdiction." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (cleaned up). And so, reasoning by analogy, we hold that interests of convenience cannot "require," for purposes of § 1965(b), that a defendant be haled into a district in which it lacks minimum contacts. We therefore disagree with the district court's conclusion that it has personal jurisdiction over the Trivest defendants.

* * *

The district court's September 12, 2023 order denying the defendants' motion to dismiss is reversed, and the case is remanded for proceedings consistent with this opinion. That the district court lacked personal jurisdiction over the Trivest defendants means that it lacked power to decide their motions to compel arbitration. We therefore vacate the court's May 23, 2025 order denying those motions.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting. In a civil RICO action, a district court may exercise jurisdiction over a defendant so long as "the ends of justice require" it and the court has traditional personal jurisdiction over at least one other co-defendant. 18 U.S.C. § 1965(b). In this case, the Michigan district court indisputably had traditional personal jurisdiction over Defendant Jayson Waller. *See Hall v. Trivest Partners, L.P.*, 2023 WL 5941729, at *7 (E.D. Mich. Sept. 12, 2023). The court did not, however, have traditional personal jurisdiction over the Trivest co-defendants because all of the Trivest entities are domiciled and maintain their principal places of business in Florida. To determine if it could nonetheless exercise jurisdiction over the Trivest entities, the court "weigh[ed] a number of factors" and determined that the "ends of justice require[d]" Trivest to be haled into court in Michigan. *See id.* at *8. My colleagues in the majority say that this conclusion was a mistake and reverse the district court—without actually explaining what circumstances would justify the exercise of § 1965(b) jurisdiction. I respectfully dissent from this holding, for the reasons explained below.

According to the majority, § 1965(b) does not allow the district court to exercise jurisdiction over the Trivest Defendants because Plaintiffs have not shown that there is an absolute necessity for this suit to be litigated in Michigan. My colleagues reach this conclusion because, in their view, the term "require" "conveys a sense of necessity," meaning that "§ 1965(b) permits service on out-of-state defendants only when 'necessary.'" Op. at 5 (citation omitted). The majority then determines that the district court did not identify any reasons making it necessary to bring this suit in Michigan. The district court considered a number of factors in reaching its conclusion that the exercise of jurisdiction under § 1965(b) was appropriate: "the desirability of having the whole action litigated in one court, the cost of the delay involved in transferring the case to another forum, and the general balance of hardships between plaintiff and defendant." *Id.* at *8 (cleaned up). But in the majority's view, these factors cannot justify the exercise of jurisdiction over the Trivest Defendants because they go to

convenience, and § 1965(b) jurisdiction applies only where it is *necessary* that a suit be litigated in a particular court.

The majority misses the mark. To reach its holding, the majority treats "require" as the most important word in § 1965(b) and interprets "require" to mean, effectively, "necessitates." It uses this reading to determine that § 1965(b) requires the plaintiff to prove some sort of ill-defined, absolute *need* for the district court to exercise jurisdiction over a foreign defendant. But that approach distorts the true meaning of the statute. Section 1965(b) confers jurisdiction where the "*ends of justice* require" it. (Emphasis added). As other courts have noted, the "ends of justice language" necessarily conveys "a flexible concept uniquely tailored to the facts of each case." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006). The Supreme Court has cautioned that where "the test is 'the ends of justice' . . . it cannot be too finely particularized." *Sanders v. United States*, 373 U.S. 1, 17 (1963). And we have recognized that statutes using the near-identical "in the interest of justice" language "confer broad discretion" on the district court. *Stanifer v. Brannan*, 564 F.3d 455, 457 (6th Cir. 2009). In short, read correctly, § 1965(b) allows the district court wide discretion in determining if it is appropriate to exercise jurisdiction over foreign defendants—it imposes no requirement that plaintiffs make a showing that the exercise of jurisdiction is strictly necessary.

Additionally, the meaning prescribed to "require" by the majority is mistaken. My colleagues state that "require" "conveys a sense of necessity," but according to Webster's Seventh New Collegiate Dictionary, the operative edition at the time § 1965(b) was passed, "require" may mean "to demand as necessary" or it may mean "to call for as suitable or appropriate." *Webster's Seventh New Collegiate Dictionary* 729 (7th ed. 1970). It is clear that § 1965(b) uses the second meaning because, in combination with the discretionary and open-ended "ends of justice" language, "require" does not carry the forceful "necessity" connotation. The more appropriate reading is that jurisdiction may be exercised over foreign defendants if the district court determines that it is suitable and appropriate to do so in service of the ends of justice.

The legislative history of the RICO statute confirms that § 1965(b) confers jurisdiction liberally and that the requirement of a showing of necessity adopted by the majority is

inappropriate. Congress enacted RICO to eradicate "highly sophisticated, diversified, and widespread" organized crime. Organized Crime Control Act of 1970, Pub.L. No. 91-452, 84 Stat. 922, 922-23. Keeping that goal in mind, Congress instructed that RICO's "provisions . . . shall be liberally construed to effectuate its remedial purposes." Pub.L. 91-452, 84 Stat. 947. With respect to the jurisdictional issue, the House Judiciary Committee noted that § 1965 was "modeled on present antitrust legislation." H.R.Rep. No. 91-1549 (1970). That antitrust legislation includes the Sherman Act and Wilson Tariff Act, both of which have jurisdictional provisions that include the "ends of justice require" language. *See* 15 U.S.C. § 5 ("Whenever . . . the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned, whether they reside in the district in which the court is held or not . . . ."); 15 U.S.C. § 10 (same). In interpreting the "ends of justice require" language, the Supreme Court determined that § 5 conferred jurisdiction over "nonresident defendants" because the district court had traditional personal jurisdiction over one defendant. *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 46 (1911). It imposed no other limitations on the lower courts' ability to exercise jurisdiction and certainly did not hold that the statutory language contained a necessity requirement.

The majority's insistence on reading a necessity requirement into § 1965(b) also appears influenced by its concern that "traditional notions of fair play and substantial justice" would not allow suit against the Trivest Defendants under traditional personal jurisdiction because they do not have minimum contacts with Michigan. Op. at 5 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This concern is misplaced. The goal of § 1965(b) is to expand jurisdiction beyond what would be allowed under traditional personal jurisdiction specifically to effectuate RICO's broad remedial purposes by "giv[ing] RICO its nationwide jurisdictional reach" thus allowing plaintiffs to sue all members of large multistate conspiracies in one court. *Cory*, 468 F.3d at 1235. Put another way, the goal of § 1965(b) is to create an exception to the normal requirement that the exercise of personal jurisdiction over all defendants comport with traditional notions of fair play and substantial justice, so it makes little sense to rely on that principle to cabin § 1965(b)'s jurisdictional reach.

Not only does the majority's holding run contrary to the statute's meaning, it also muddies the jurisdictional requirements of § 1965(b). The majority determines that the § 1965(b) jurisdictional requirements are not met in this case, but it never establishes what the jurisdictional requirements of § 1965(b) actually are. The opinion concludes that "when all the defendants . . . are subject to suit in one district, the 'ends of justice' are 'unlikely' to *require* haling nonresident defendants into another district." Op. at 5 (citation omitted). But beyond this, the majority offers no guidance as to what circumstances make it "necessary" to exercise jurisdiction under § 1965(b), and thus clear the jurisdictional bar it has invented. Future litigants are left wondering what precisely they need to show in order to attain jurisdiction under § 1965(b).

Ultimately, it is clear that § 1965(b) gives the district court broad discretion to perform a flexible and open-ended inquiry into whether the ends of justice require it to exercise jurisdiction over the foreign defendants in a RICO action. In this case, the district court correctly determined that it had jurisdiction over the Trivest Defendants. Aware that the "ends of justice language" called for a flexible and discretionary inquiry, the district court "weigh[ed] a number of factors" to determine if it could exercise jurisdiction over the Trivest Defendants. *Hall*, 2023 WL 5941729, at *8. The district court noted that transfer to Florida would result in "undue delay" and then considered the "general balance of hardships between plaintiffs and defendants" to conclude that Defendants would be minimally burdened by litigating the case in Michigan. *Id.* The district court's approach and conclusion were correct. All of the Plaintiffs in this case are Michiganders; they allegedly suffered harm in Michigan, caused by a scheme operated out of Michigan; and Trivest chose to invest money in and thus materially support this allegedly fraudulent scheme in Michigan. As the majority acknowledges, the Trivest entities were involved in preparing and disseminating allegedly fraudulent advertising materials for the Power Home Solar scheme, which ultimately targeted consumers in Michigan. Defendants have retained competent counsel to litigate this case in Michigan, and have been doing so since 2022, and they have identified no particular hardship they face by defending their claims in Michigan. It also stands to reason that most of the evidence relevant to this case is related to or located in Michigan.

By contrast, it is not at all clear how this case relates to Florida—where the majority claims this case would be more appropriately litigated. Waller registered PHS as a business in Florida, but there is no information in the record suggesting that PHS actually conducted any business there or harmed any consumers. It is also not clear from the record that traditional personal jurisdiction over Defendant Waller exists in Florida—the district court stated in passing that "it appears the entire case could be litigated in Florida," but the record contains no information about Waller's contacts there. MTD Order, R. 32, PageID #305. In this case, Plaintiffs' lawsuit seeks to remedy harm inflicted and suffered in Michigan, and Plaintiffs used § 1965(b)'s liberal jurisdictional provision to bring suit in Michigan. Keeping in mind "the general rule" that "the plaintiff is the master of her complaint and gets to choose where and how to sue," Plaintiffs have demonstrated that Michigan is the appropriate location for this suit. *K.B. by & through Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 799 (6th Cir. 2019). The district court was thus correct to conclude that the ends of justice support exercising jurisdiction over the Trivest Defendants in Michigan.

By seeking to hold accountable a Florida private equity fund that allegedly enabled a business to engage in practices that harmed and defrauded consumers in Michigan, Plaintiffs are trying to pursue precisely the remedial aims for which RICO was enacted—to eradicate widespread and sophisticated organized crime schemes. "That purpose is not furthered by withholding nationwide service of process whenever all of the RICO defendants could be haled into one court" or by imposing other prescriptive and extra-textual roadblocks to jurisdiction, as the majority does. *Cory*, 468 F.3d at 1232.

Accordingly, I would affirm the district court's determination that § 1965(b) confers jurisdiction over the Trivest Defendants and allow this suit to proceed in Michigan.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 25-1278/1538

AARON HALL; KATHERINE GLOD; JEFFREY BINDER,

Plaintiffs - Appellees,

v.

TRIVEST PARTNERS, L.P., TGIF POWER HOME INVESTOR, L.L.C., TRIVEST INVESTMENT ADVISORS, L.L.C., TRIVEST PARTNERS, INC., TRIVEST GROWTH PARTNERS, INC., TRIVEST GROWTH PARTNERS, L.P., TRIVEST GROWTH PARTNERS G.P., L.L.C., TRIVEST GROWTH INVESTMENT FUND, L.P., and TGIF POWER HOME BLOCKER, INC.,

Defendants - Appellants.

**FILED**
Jun 16, 2026
KELLY L. STEPHENS, Clerk

Before: CLAY, KETHLEDGE, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Flint.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's order denying the defendants' motion to dismiss is REVERSED, and its order denying their motions to compel arbitration is VACATED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk